We'll now move to the second case on the calendar. That's Indemnity Insurance Company v. Unitrans. All right, Mr. Heilig, am I pronouncing your name right? Yes, sir. Okay, Mr. Heilig, you have ten minutes, but you've reserved one for rebuttal. So you may proceed. Good morning, Your Honors. May it please the Court, Justin Heilig of Hill Rifkins for the appellant. Time permitting, I'd like to focus on two issues today. First, the District Court's determination that the appellee, Unitrans, was a contracting carrier under Article 39 of the Montreal Convention. Can I interrupt and ask how come this was removed a year after it was originally filed? Was there some agreement between the parties to toll that period? I don't believe so, Your Honor. I believe in the removal papers the appellee claimed that this was artful pleading doctrine, that they didn't discover that there was a federal claim in play until the parties proceeded to mediation. Because it was filed in September 2016 and removed in August 2017. No one complained about it? I don't believe so, Your Honor. Because it was just a removal. Yeah, to my knowledge, Your Honor, no one complained about it. All right, go on. So the second issue would be the District Court's interpretation and application of Article 18 of the Montreal Convention. So in moving for summary judgment, the appellee, Unitrans, argued that it was an agent of the air carrier. It said, our local agent filled out the airway bill, and therefore Unitrans itself is an agent of the air carrier. And the District Court sidestepped that issue. It said, I don't need to address the agency issue because I am finding under Article 39 that Unitrans is a contracting carrier. Even though Unitrans never actually made that argument as part of its motion. We're going to ask him about that in a minute. I think there may be downsides to being a contracting carrier for all purposes of the Montreal Convention. If the interpretation is that any time carrier is used, it includes contracting carrier, that might be more than what Unitrans really wants. Correct, Your Honor. And more often than not, freight forwarders don't like to be called carriers. It may help them in this case, but it might not help them in others. But I'll get to that in a minute. So remarkably, Unitrans in this appeal makes no effort to defend the District Court's determination that it was a contracting carrier under Article 39. So we argue that they've conceded that point. They've conceded what point? That they were not a contracting carrier. I mean, well, the District Court, Judge Pollack, did find that they were a contracting carrier, right? Sui sponte. Okay. But because Unitrans is not defending that determination on this appeal, they've effectively waived that argument. You're saying it's a waiver. I guess, you know, they do make a brief reference to it. It's the Tolbert v. Queens College case, Your Honor, where the court said, Issues averted to by Napelli in a perfunctory manner unaccompanied by some effort at a developed argumentation are deemed waived. That's what we have here. But either way, the District Court improperly applied Article 39, which appears in Chapter 5 of the Montreal Convention. And I note this because the provisions of Chapter 5 do not appear in the Warsaw Convention, which is the preceding air carriage treaty. And so the cases that look at the Warsaw Convention are not instructive here because those provisions do not appear in that earlier treaty. So you're saying the definition of a contracting carrier only applies with respect to Article 5, to Section 5? It only appears in the Montreal Convention. It does not appear in the Warsaw Convention. Right, but I think the point is that- There's no previous case law that we have to adopt. Is that what you're arguing? Exactly, Your Honor. And courts will say because the case law on the Montreal Convention is so limited, we'll look to Warsaw case law as either binding or instructive where the provisions are the same or essentially the same. Your point is that the definition of contracting carrier, which is in the Montreal Convention, doesn't then inform the term carrier for the rest of the Convention. Yes, Your Honor. The drafters, let's say, for example, Article 18 and the definition of carriage by air. The drafters of the Montreal Convention, because they distinguish between contracting carriers and actual air carriers in Article 39, they could have revised Article 18 to do the same, but they don't. Well, the argument is that they did implicitly because by defining it in Article 39, it carries over for the rest of the Convention. Obviously, that's not your argument. And I've seen no evidence of that in either legislative history- And there's no cases that have said that, right? Correct, Your Honor. Like I said, the case law on the Convention is very limited. But I want to focus on Article 39 because the district court partially quoted Article 39 in its original decision, but it omitted some key language by using ellipses. Article 39 states that a contracting carrier is someone who, quote, as a principal makes a contract of carriage governed by this Convention, unquote, and then uses an actual carrier to perform the transport. The district court omitted the words as a principal in its initial decision, and that was a crucial oversight because Article 39 first requires a contracting carrier to enter into a contract, not just any old contract, but a contract governed by the Montreal Convention, which would be an airway bill under Article 11. And second, it requires the contracting carrier to do so as a principal. Now, remember, Unitrans has always argued that it was an agent of the actual air carrier, and there was only one airway bill issued in this case, the U.S. Airways airway bill. Now, it's standard industry practice for two types of airway bills to be issued, house airway bills, which are issued by contracting carriers. So you're saying if there were two air bills, as is customary, that would make them a principal? If the house airway bill was issued by Unitrans as a carrier, it would be done so as a principal, and it would qualify as a contracting carrier. But it didn't do that in this case. So you're saying if they were principal, it would have been one air bill that said Amgen as shipper and Unitrans or its agent as carrier, air carrier, and then there would have been another one that basically said Unitrans and U.S. Air. Almost, Your Honor. The house airway bill would have listed Amgen, the actual consignor and consignee as the two parties. It would have been issued in the name of Unitrans as carrier. Typically what happens on the master airway bill, Unitrans would appear as both the shipper and the consignee, and that raises a whole bunch of other issues with respect to standing, which the court discussed in commercial union, but that's getting off track. What about the agency argument? So when Unitrans did take the position that it was an agent of the air carrier, why doesn't that take this under the Montreal Convention? So a putative agent cannot create agency authority for itself or an agency relationship. All they said is our own agent filled out the airway bill. Therefore, upstream, we are an agent of the air carrier. There was only limited discovery in this case. U.S. Airways, the actual air carrier, is not a party, did not participate in discovery. There are no manifestations from the alleged principal showing an agency relationship. Well, there's just an air bill that lists Unitrans or its agent as the agent for both. We argue that the airway bill is actually facially ambiguous. If you look at it, multi-cargo signed on both the line for the shipper and the line for the carrier. Unitrans is listed in the notify party box. We would say that it's facially ambiguous. Multi-cargo is Unitrans for the purposes of this dispute, right? They say agent, but it could be just a subcontractor in Ireland. They were downstream. What Unitrans is actually arguing is that there's an upstream agency relationship. Well, there needs to be for them to be making this claim, right? There needs to be an upstream relationship for them to be a principal. That's really what you're saying. Yes. Well, this is one of the reasons why we analogize this to the ocean carriage industry, where you have NVOCCs, non-vessel operating common carriers. They issue house bills of lading, which is very similar to a house airway bill. This court has said multiple times that an NVOCC is a hybrid entity. It is a contractual carrier with respect to its shipper, its customer. When it comes to booking the carriage with an actual carrier, it is the agent of the shipper, and that's the same argument we would make here. Unitrans was acting on the shipper's behalf. Who is that? Who do you argue is the agent of the shipper? It would be Unitrans. It would be Unitrans, Your Honor. And that's why we also look at Article 7 of the Montreal Convention, which says when an airway bill is filled out, it's done so on behalf of the consignor, which is the shipper, our subregor in this case. I see my time is running low. Are you going to get to Article 18? I thought that was a big piece of your argument. Article 18 is very important, so if the court will indulge me. I'm feeling very indulgent if my colleagues are okay with that. Without Unitrans being a contracting carrier under Article 39, the district court's analysis of Article 18 falls apart. In addressing the definition of carriage by air, which is really the crucial element in this entire case, the district court skipped over Articles 18.1, Article 18.3, and went directly to Article 18.4. And that was improper and put the proverbial cart before the horse. Well, the Eleventh Circuit sort of parsed this provision, and you're asking us to do the same, right? Yes, Your Honor. Our position is a bit different, but I'll explain why in a second. Article 18.1 states that the carrier is liable for damage to cargo, quote, upon condition only that the event which caused the damage, so sustained, took place during the carriage by air. Carriage by air is a defined term of art. 18.3 then defines that term. It says carriage by air comprises the period during which the cargo is in the charge of the carrier. So if it's not in the charge of the carrier, there is no carriage by air, and Montreal doesn't apply. I would also point out in 18.1, the language, the only on the condition that, that is new language. That does not appear in the prior Warsaw Convention. That is new language to the Montreal Convention. Are you arguing here that it wasn't in the charge, these drugs were not in the charge of the carrier? Yes, Your Honor. They were damaged? Yes, Your Honor. In its interrogatory responses, Unitrans expressly admits that the cargo was in its care, custody, and control at the time of the loss. Care, custody, and control is synonymous with being in the charge of a party. And therefore, they've admitted that it was, they also say in their interrogatory responses, we were engaged to place the cargo in the charge of the air carrier's ground handling agent. Ground handling agents are the ones who actually take the cargo, put it on the plane. And that's what they did with the first pallet, right? The first, not the second. The second is the damaged one. No, I get that. The first pallet they did. So you would say the first pallet was in the charge of the carrier. In the charge of the carrier. Yes. And the second one that dropped off the truck clearly was not, hadn't made it yet. Correct. And the third one went through, didn't it? I believe it did, Your Honor. Yes. And that is consistent with the rest of the convention because if only one cargo, one crate is damaged, that's the only one that's going to matter for purposes of like the limitation of liability, subject to some exceptions that are not relevant. So, but the court need, what the court, what the district court did was skip directly to 18.4, which is what the 11th Circuit described as the bedeviling, rebuttable presumption. I assert, Your Honor, that, Your Honor, this court need not even address 18.4 because it has no application. Well, because there's no dispute about where this damage took place. Correct. We know exactly where it happened. We don't need a presumption. We know, and nobody's suggesting that it happened outside of the airport. Nobody's suggesting that it happened. On the airport grounds, so. Yes. On the airport grounds. It probably applies to the cases where there's damage at the end and you don't know where it happened, and then a presumption makes sense. But here, we don't need it. Exactly, and that's what this court said in commercial union. It's a tradeoff. The presumption is a tradeoff. On one hand, carriers can limit their liability, often drastically, as would be the case here, because pharmaceuticals don't weigh that much. On the other hand, the presumption under 18.4 is a concession to plaintiffs, in that it alleviates, or I guess it lessens their evidentiary burden, in having to show how and why a loss occurred when they don't control any of the modes of transport. So basically, your adversary will ask them directly, but is saying that anything that happens on an airport is on the knife of the carrier, right? That will be their argument. Their response is that, nope, it's only when it's in charge of the carrier, and that doesn't happen until the moment that the pallet leaves the truck. It has to be placed in the charge of the carrier, whether that's, you know, they can take it off the truck and then a half hour later give it to the carrier. The carrier's ground agent had the forklift. I'm sorry, Your Honor? The carrier's ground agent is the one who had the forklift, right? It was a pallet jack being operated by the trucker, not by the ground handling agent. Oh, it wasn't. Correct. So isn't the whole point of the Montreal Convention and the Warsaw Convention before it to avoid this kind of figuring out where it was damaged once it's on in the place of performance of a contract for carriage by air? They were on the airport grounds. I find that persuasive. Your Honor, the Montreal Convention, just like the Warsaw Convention, could have said if the loss occurs on airport grounds, it's covered. But it doesn't say that. It uses the phrase in the charge of the carrier. That's how carriage by air is defined. And if we look quickly at Article 38, 38 states, in the case of combined carriage performed partly by air and partly by any other mode of transportation, the Convention only applies to the carriage by air subject to Article 18.4, which is the presumption. The Convention doesn't place the onus on the shipper or the plaintiff to figure out where and when the loss occurred. That's on the defendants to figure out. Here, as Judge Sullivan said, the who, what, when, where, why, and how the loss occurred in this case are known. And therefore, 18.4 has no application. Subject to proof to the contrary, we've got proof to the contrary, and nobody's questioning that proof. And that's precisely what happened in Victoria's Sales, where the parties agreed the loss occurred outside the airport after air carriage had taken place. Now, Victoria's Sales is distinguishable for many other reasons, but the court found the presumption had been rebutted because the parties agreed on where and when the loss occurred. Thank you. You've reserved a minute for rebuttal. Yes, sir. All right. Mr. Orzel, am I pronouncing that right? Yes, sir. Good morning. If it pleases the court, my name is John Orzel, with the law firm of Kennedy's representing defendant at the lead, Unitrans International. Okay. So let me ask you straight out. Is Unitrans a contracting carrier? Unitrans positions that they are. So with regard to shipments that they handle, in this case, because the shipment fell apart before it was actually carried, these . . . The principle . . . where's the language? As a principle, I think, was the language that your colleague said was omitted by the district court in 39. A contracting carrier as a principle, when a person as a principle makes a contract of carriage. So my question is, is Unitrans a principle? No. Unitrans is an agent. And so how then can it be a contracting carrier? It becomes a contracting carrier when there's the intent to issue its own airways bill. Well, there are a lot of cases where Unitrans, you described yourselves, I think, as a logistics company, right? Correct. Okay. And so are you saying that by virtue of being a logistics company, you are a contracting carrier for purposes of the Montreal Convention, in all cases like this one, where you're merely issuing air bills as an agent for a consignor and an agent for the actual carrier? Be careful what you answer to this, because it seems to me that you might be biting off more than you want. There are a lot of cases where you don't want to be the contracting carrier, I imagine. You don't want to be on the hook for all of this. True. I mean, here it happens to be a very handy statute of limitations that works real well to make this claim go away. But there might be other cases down the road, and you'll be quoted, about whether or not you in fact are a contracting carrier, whether your company, Unitrans, is that. In all cases like this one, I bet there are a lot of them. Unitrans' position is that, yes, they are. Okay. Well, what if we assume it isn't? Then what? I mean, your original position in the case was that it's an agent. So what is your argument with Unitrans as an agent? Why does this come within the convention? Because without Unitrans being an agent, the U.S. Airlines airway bill doesn't get issued. It's being issued by the agent. So Unitrans is an indispensable part of the contract as noted in the way bill? Correct, through its agent in Ireland. So that's your argument, that once this starts, once the drugs are picked up at the manufacturing facility, the carriage by air begins? That would be my argument, but I don't think I need to go there. Let me answer that, because I'm curious to know, because Article 18 talks about the period during which the cargo is in the charge of the carrier. So at what point did the cargo become in the charge of the carrier, according to you? When it was picked up at the Amgen facility. At Amgen. Correct. And what's the theory for that? What's the reasoning? Because it was picked up by the trucker who was arranged by Unitrans as an agent. And tell me again why Unitrans is an agent of U.S. Airways? Because Unitrans is the party that's issuing the bill of lading for U.S. Airways. Counsel, did you have an agreement with the opposing parties to remove the suit a year after it was first filed? We did, because before the case was removed... You tried to settle it. Correct. Because you could have objected, so did you waive your objections? To removal? To removal more than 30 days after filing. We're the ones who removed it, weren't we? Did you have an agreement that you could do that? Yes, we did. So it was informal or formal? I believe it was verbal. To be perfectly honest, the point was to get out of state court and put it in front of the federal bench that has the experience with the Montreal Convention. And, you know, at that point of removal, it was removed because it's a Montreal Convention case. Which could have been argued in state court, as you know. Correct, but it was... I'm embarrassed to admit that, but both counsel, we decided that proceeding in state court in the Bronx did not make a great deal of sense when we have the option of the federal bench in Brooklyn. You only had the option because the opposing party agreed, because you missed the time limit for removal, which is 30 days. Correct. So you did this almost a year later. That's correct. And you had to get their approval. That is correct. And so that was an informal agreement because you were trying to reach a settlement during that period. Correct. I think I want to make sure I understand what you're saying. You're saying that contracting carrier, which is defined in Article 39, effectively changes the meaning of carrier throughout the Montreal Convention. That's what you're saying? So that in Title 18, when it talks about carrier, that necessarily includes contracting carrier. That's your argument? Correct. We made the contract with Amgen to transport this cargo by air. Well, you made a contract with Amgen to arrange for transportation of their cargo by land and by air, right? Correct. And so it seems to me what you're saying is that by virtue of that arrangement, you are a contracting carrier, as defined in Article 39, and that, under Article 18, carrier includes contracting carrier so that you then, in this case and all cases like it, are going to be liable for damage to the cargo at any point. After pickup. After pickup. That's what you're saying. That is unit transposition because they wanted to have a strict regime of liability for their entire time of responsibility for that cargo. Would it also be their position if it was within the statute of limitations and this could have gone forward under the Montreal Convention? Yes, Your Honor, because at that point we would make the argument that we have a package limitation or a liability limitation based on the Montreal limitation. So that was maybe the source of the negotiation to try and pay what the Montreal Convention would require. Ms. O'Brien, who made these arrangements with me, it's like originally when we discussed the case it was, well, let's try to mediate it because we were pulled apart in terms of what we considered liability. We were looking at $14,000. Ms. O'Brien was looking at $2.7 million. Yeah, that's a big difference. So why is there not an air bill that lists you guys as the air carrier then? I believe because the cargo was damaged at the turnover to U.S. Airways. And I think that that Well, I mean, we'll ask Mr. Heilig about this again. But what Mr. Heilig said is that ordinarily for situations where the carrier is, the contracting carrier is going to be treated like a principal, there's going to be two air bills. One in which they're listed as the air carrier. That's not the case here, right? U.S. Airways is the only one listed as the air carrier. Correct. Do you disagree with what he described as the standard? Oh, no. I believe that is the standard. And I believe that is what would have happened in this case if this transportation went through to destination. So your argument now is that it doesn't, I mean, whether this happened at the airport or on a merry-go-round doesn't matter. You picked it up at Amgen as the air carrier. Correct. Okay. The fact that it happened A lot of time spent in the briefs talking about airports. Well, the fact that it happened on the airport Is irrelevant. Well, but in terms of our argument, that was the path of least resistance. So would you have been liable if there was an automobile accident on the way to the airport and one of the pallets, one of the boxes of drugs was damaged? Yes, Your Honor. I believe we would. So the fact that it was on airport grounds is irrelevant, as you're just saying. It's irrelevant, but because it was a clear point of reference that that's what we are. So once you picked up the goods, you were responsible. Yes, Your Honor. What if you weren't an agent and you weren't a carrier? Would it have mattered whether it was at the airport? If we weren't an agent and we weren't a carrier, I don't believe so, because then we would go back to our standard terms and conditions. And so the airport really is irrelevant from your perspective? Correct, it is. But from the point of view of trying to prove Montreal application, it was the path of least resistance. Well, what does that mean? I'm trying to, if it's not an agent, if it's not a carrier, did it matter that it happened at the airport, that the damage took place at the airport? Well, frankly, we stressed at the airport because of this court's Victoria Sales case. So what's the answer to my question? If it's not an agent and it's not a carrier, is the location at the airport of any relevance? No, because at that point, we would still have responsibility for that cargo. And at that point, it would be a question of who do we seek indemnity from? Thank you. All right, thank you, Mr. Rozelle. Okay, Mr. Hiley, do you have a minute? There might be a lot you want to get into. Only three quick points, Your Honor. First, there's no evidence in the record that a house airway bill would have been issued by Unitrans in its own name as carrier. Remember, we only had limited discovery, and there's absolutely no evidence that it would have done so. And I may have misspoken in response to Judge Sullivan's question. I did say it's an industry standard. It's common for two airway bills to be issued. There doesn't need to be two airway bills issued. In fact, I think the expeditor's case from the 11th Circuit, I think there was only one master airway bill issued in that case. The absence of a house airway bill from Unitrans is actually consistent with the idea or the proposition that Unitrans didn't consider itself to be a carrier. If it considered itself to be a carrier, it would have issued its house bill avoiding. We don't have that here. The second point is agency is typically an issue of fact. When viewing the limited record in the light most favorable to the plaintiff, my client, the district court erred by potentially finding that there was an agency relationship. I cannot stress enough that there's no evidence that US Airways, the alleged principal, considered Unitrans to be its agent. But Unitrans considered itself to be the agent. That's irrelevant, Your Honor. But that's what we just heard today from counsel. Why is it irrelevant? Because the manifestations of the principal are what matter, not what the alleged agent says. And we cite several cases in our briefs about that. I believe the court in Commercial Union touched upon that. I also heard Mr. Orzel reference the general terms and conditions, Unitrans general terms and conditions. In moving for summary judgment, Unitrans argued those general terms and conditions apply. Now, the district court disagreed expressly. But those general terms and conditions actually state in them that Unitrans assumes no carrier liability. So they can't have it both ways. They can't say our general terms and conditions apply, in which they don't assume carrier liability, and now all of a sudden say, oh, well, we actually are a carrier for purposes of the Montreal Convention. Thank you, Your Honors. All right. Well, thank you very much. We will reserve decision.